## IN THE CIRCUIT COURT FOR BALTIMORE CITY, MARYLAND

| | |
|---|---|
| RIKER MCKENZIE-EL<br>6639 Dogwood Road<br>Gwynn Oak, Maryland 21207 | * <br> * <br> * <br> * |
| PLAINTIFF | * <br> * |
| vs. | * <br> * |
| AMERICAN SUGAR REFINING, INC.<br>1100 Key Highway East<br>Baltimore, Maryland 21230 | * <br> * <br> * <br> * |
| DEFENDANT | * |
| | * |

Case #:  24-C-21-002160

* * * * * * * * * * * * * * * * * * * * * * * * * * *

Case: 24-C-21-002160
CV File Fee
                                    $80.00
Appear Fee
                                    $20.00
RIF-New Case
                                    $30.00
MISC
                                    $35.00
TOTAL                          $165.00
Receipt #:2021000007767
Cashier: KE 0000A52
05/12/21   11:41am

## COMPLAINT

Plaintiff, Riker McKenzie-el, by and through his attorney, Mohamed M. Bamba, Esq., and the Law Office of Mohamed Bamba, file this complaint against Defendant, American Sugar Refining, pursuant to Md. Rule 2-303 and for good cause states:

### PARTIES

1. Plaintiff, Riker McKenzie-el, is now and at all times relevant to this suit, a resident of Baltimore County, Maryland.

2. Defendant, American Sugar Refining, is now and at all times relevant to this suit, a company operating its business in Baltimore City, Maryland.

### JURISDICTION AND VENUE

3. This Court has jurisdiction over this action in that the events at issue transpired in Baltimore City, Maryland, and the amount in controversy exceeds $30,000. *See* Md. Cts. & Jud. Proc. Code Ann. § 1-501.

4. This Court has personal jurisdiction over the Defendant in that the Defendant has an office in Baltimore City and regularly transacts business and performs services in Baltimore City, Maryland. *See* MD.CTS. & JUD.PROC. CODE ANN. § 6-103 (b)(1).

1

5.  Venue properly lies in Baltimore City in that the Defendant carries on regular business in Baltimore City. *See* MD. CTS. & JUD.PROC. CODE ANN. § 6-201(a).

## STATEMENT OF FACTS

### Background

6.  The Plaintiff, Mr. McKenzie-el, is a male resident of Baltimore County, Maryland.

7.  The International Longshoremen's Association is a labor union representing longshore workers throughout the United States.

8.  International Longshoremen's Association (hereinafter "ILA") Local 333 is a union that operates for the benefit of Longshore workers in the port of Baltimore, as a local affiliate of the ILA.

9.  From December 1973 to August 2020, Plaintiff McKenzie-el was a member of ILA's Local 333.

10. From 1985, Mr. McKenzie-el has held various positions with Local 333 including, but not limited to: walking delegate, executive board member, and president.

11. In 2014, Mr. McKenzie-el undertook two positions, vice president with the International Longshoremen's Association (ILA), which operates on a nationwide level and president with Local 333, which operates on a local level.

12. During Mr. McKenzie-el's time with Local 333, he has advocated for the rights of the union members of Local 333, as well as the enforcement of the February 19, 1971 consent decree (Order No. 20688) established by *United States v. International Logshoremen*.

### Plaintiff's Employment With The Defendant

2

13. The Plaintiff was employed by the American Sugar Refining, Inc. (hereinafter "ASR") from February 2019 to August 14, 2020.

14. Defendant ASR, is a member of the Steamship Trade Association of Baltimore.

15. The relationship between ASR as an employer and Mr. McKenzie-el as an employee and a member of Local 333 is governed by a collective bargaining agreement.

16. The current employment/collective bargaining agreement impacting the Plaintiff is valid from October 1, 2018 to September 30, 2024.

17. While Mr. McKenzie-el was employed with ASR, Eric Zollars (hereinafter "Superintendent Zollars" or "Zollars") was his supervisor.

**Plaintiff's Union Activities To Address Defendant's Improper Conduct**

18. On or about October 1, 2018, the contractual rate for the Plaintiff's position as Foreman was scheduled to increase by $4.50 an hour with an additional $1.50 pay differential for his additional duties of overseeing a work site.

19. The Plaintiff never received a pay increase or the pay differential from the Defendant.

20. The Plaintiff, as President of the local union, advocated and constantly implored the Defendant to be compliant with the collective bargaining agreement.

21. In March 2019, the Plaintiff complained to ASR management about the pay increase and pay differential and nothing was done to remedy the issue.

22. In October 2019, the Plaintiff raised safety concerns with respect to crane operations at the ASR plant.

23. On December 28, 2019, Mr. McKenzie-el reported another workplace safety issue to ASR management and human resources after his coworker Teron Matthews

3

told the Plaintiff that an unsafely operated crane bucket almost killed Mr. Matthews.

24. Mr. McKenzie-el advocated against the exposure of asbestos, carbon monoxide, and other toxic chemicals on the plant including the break room and restrooms.

25. Due to Mr. McKenzie-el's efforts, an independent investigator investigated whether the workers were being exposed to any harmful chemicals.

26. The independent investigator found the employees were being exposed to asbestos in the flooring.

27. Additionally, the Defendant allowed uncovered wires to be open on the floor, putting employees at risk.

28. Mr. McKenzie-el was almost electrocuted by the wires and the Defendant did not do anything to remedy this issue.

**Plaintiff's Complaints To Remedy The Workplace Environment**

29. On April 7, 2020, Mr. McKenzie-el filed a complaint for discrimination in violation of the Civil Rights Act of 1964 ("Title VII), 42 U.S.C § 2000 et seq., and Section 1981, 42 U.S.C. § 1981, as well as violations of the Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab. & Empl. § 3-501 et seq., and the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab & Empl. § 3-401 et seq.

30. In June and July 2020, the Plaintiff complained to ASR management indicating COVID-19 violations created an unsafe work environment, especially older employees pursuant to Maryland Code Labor and Employment §5-104 (a), which states: (a) Safe employment and places of employment. -- Each employer shall provide each employee of the employer with employment and a place of employment that are: (1) safe and healthful; and (2) free from each recognized hazard that is causing or likely to cause death or serious physical harm to the employee.

**Retaliation Due To Union Activities**

31. On December 28, 2019, a few hours after the Plaintiff reported the safety concern of co-worker, Teron Matthews, Mr. McKenzie-el was removed from the work schedule by Superintendent Zollars.

32. Superintendent Zollars falsely accused the Plaintiff of being late to work that day, and removed Plaintiff from the work schedule for said reason. Subsequently, Mr. Zollars issued a written warning, which included false allegations regarding Plaintiff's performance and conduct.

33. After Mr. McKenzie-el continued to advocate for the rights of employees, Superintendent Zollars began trying to punish him for his actions by making false reports.

34. On March 21, 2020, Superintendent Zollars falsely claimed Mr. McKenzie did not return to work even though he had the luxury to leave at the allotted time, in accordance to the contractual agreement with the Defendant.

35. Subsequently, Superintendent Zollars report was removed from Mr. McKenzie-el's file as the complaint was determined to be improper.

36. On March 23, 2020, Superintendent Zollars attempted to create another false story about Mr. McKenzie-el, stating he had not done the requirements of his role on a rain day, which required all workers to cease performing work duties.

37. Superintendent Zollars wrote a false report about Mr. McKenzie-el for this March 23, 2020 occurrence. The report had to be removed from Mr. McKenzie-el file as it was shown that the rain required all workers to cease work for that day.

38. On June 15, 2020, Superintendent Zollars again made a false report about Mr. McKenzie-el. Zollars made the same type of report that was done on March 21, 2020. This claim was also found to be improper.

39. After being unable to discipline Mr. McKenzie-el with the aforementioned complaints, on July 30, 2020, management accused Mr. McKenzie-el of urinating in a container in the employee break room.

40. The Defendant was unable to provide witnesses or any evidence to support the claim that Mr. McKenzie-el was urinating in the employee break room and claimed the incident was on camera.

41. After being consistently asked for the video evidence of the incident, the Defendant provided a video of Mr. McKenzie-el in the break room two days prior to the alleged incident and there was nothing showing he urinated on the premises.

42. Mr. McKenzie-el was being accused of something that did not transpire due to management's disdain for his union activities.

**Plaintiff's Improper Termination**

43. On August 14, 2020, the Defendant bypassed the requirements in the collective bargaining agreement for termination and terminated the Plaintiff for an offense that could not warrant termination under the collective bargaining agreement.

## COUNT ONE (BREACH OF CONTRACT)

44. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

45. With respect to the Plaintiff's employment contract, Plaintiff has performed all the conditions, covenants and promises on his part to be performed.

46. Defendant has breached the employment contract as it relates to section 1, Article XVIII- Discipline, which states:

No employee shall be disciplined in any fashion without prior notice to the Union. The discipline which may be imposed against an employee without prior approval of the Union shall be limited as follows:

6

    a. Pilfering or broaching of cargo, theft, use or carrying of dangerous weapons on the employers' premises and willful destruction of property, and fighting (taking into consideration all of the relevant circumstances) are Major Offenses which may be dealt with as the circumstances may require, including discharge.

    b. No employee shall be disciplined for other than a Major Offense unless:

    i. Prior written notices of such proposed discipline, including proposed warning letters, is given to the Union, which shall have a reasonable opportunity to respond before such action is implemented; and

    ii. The employee has received at least one prior written warning for the same or equivalent offense within the last twelve (12) months in the case of a suspension for three (3) days or less or a least two (2) prior written warnings for the same offense within the twelve (12) months in the case of a suspension for from four (4) to seven (7) days, or has received at least three written warnings for the same offense within the last twelve (12) months in the case of a suspension for from eight (8) to thirty (30) days, or has been suspended for more than seven (7) days within the last twelve (12) months in the case of termination.

47. Defendant has breached the employment contract as it relates to Article V - Wages.

48. Defendants' first written notification of Plaintiff's termination was given on August 14, 2020. In failing to pay Plaintiff the salary, accrued vacation, and benefits due him under his employment contract for the period of August 14, 2020 through April 16, 2021, ASR has breached the employment contract.

49. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered a loss of income, salary and benefits.

**WHEREFORE,** the Plaintiff, Riker McKenzie-el, hereby seeks the sum of over **SEVENTY FIVE DOLLARS ($75,000.00)** in damages.

## COUNT TWO (WRONGFUL DISCHARGE)

50. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

51. Defendants terminated Plaintiff in bad faith, and without good cause, for the purpose of depriving Plaintiff of the opportunity to exercise his rights. Defendants had no good cause to terminate Plaintiff. Defendants' stated reason—that Plaintiff urinated on the premises—was false, and Defendants knew that this reason was false. Defendants' stated reason was a pretextual, bad faith reason, since there is no evidence supporting this incident.

52. Under the Collective Bargaining Agreement, which the Defendant is a party to, the alleged urination is not a dischargeable offense.

53. It is the public policy of Maryland that employers may not fire employees for engaging in protected action. According to Maryland Code State Personnel And Pensions § 3-301, an employee has the right to "take part or refrain from taking part in forming, joining, supporting, or participating in any employee organization or its lawful activities" and "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

54. Defendants' purpose in terminating Plaintiff on August 14, 2020, was to punish the Plaintiff for engaging in a protected right. By terminating the Plaintiff in the manner set forth herein, Defendant has violated this public policy.

55. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered a loss of income and benefits, and has further suffered emotional distress, as well as damage to his reputation.

56. In doing the things herein alleged, Defendants' conduct was despicable, and Defendant acted toward Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** the Plaintiff, Riker McKenzie-el, hereby seeks the sum of over **SEVENTY FIVE DOLLARS ($75,000.00)** in damages.

8

## COUNT THREE (BREACH OF THE COVENANT OF GOOD FAITH AND FAIR DEALING)

57. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

58. Plaintiff's employment contract contained an implied-in-law covenant of good faith and fair dealing that neither party would do anything to injure the right of the other party to enjoy the benefits of the contract.

59. In terminating Plaintiff in bad faith, without good cause, upon a pretext, all for the purpose of depriving Plaintiff of the opportunity to exercise his protected rights, ASR breached this covenant of good faith and fair dealing.

60. As a direct and proximate result of Defendants' conduct, Plaintiff has suffered a loss of income and benefits.

61. In doing the things herein alleged, Defendant's conduct was despicable, and Defendant acted toward Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** the Plaintiff, Riker McKenzie-el, hereby seeks the sum of over **SEVENTY FIVE DOLLARS ($75,000.00)** in damages.

## COUNT FOUR (FALSE LIGHT)

62. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

63. Plaintiff's termination and said remarks by Defendant engendered publicity that unreasonably placed the Plaintiff in a false light before the public. As such, they constituted an invasion of Plaintiff's right to privacy and were highly offensive to a reasonable person.

64. The Defendant had knowledge of or acted in reckless disregard of the falsity of the publicized matters and the false light in which they placed the Plaintiff.

9

65. As a result of Defendant's conduct, Plaintiff has suffered great mental distress, personal and professional humiliation, and substantial financial damages.

66. In doing the things herein alleged, Defendant's conduct was despicable, and Defendant acted toward Plaintiff with malice, oppression, fraud, and with a willful and conscious disregard of Plaintiff's rights, entitling Plaintiff to an award of punitive damages.

**WHEREFORE,** the Plaintiff, Riker McKenzie-el, hereby seeks the sum of over **SEVENTY FIVE DOLLARS ($75,000.00)** in damages.

<u>**COUNT FIVE (DEFAMATION)**</u>

67. Plaintiff incorporates the allegations contained in the foregoing paragraphs as though fully set forth herein in their entirety.

68. The statements made by the Defendant that the Plaintiff urinated in the Defendant's building, were false and known to be false at the time they were made. The Defendant made the statements with the intention of injuring the Plaintiff.

69. The statements made were libelous, and defamatory per se.

70. As a direct and proximate result of the statements set forth, the Plaintiff has been damages and will continue to suffer damage. The Plaintiff has suffered irreparable harm to his reputation for which the Defendant should be held liable.

**WHEREFORE,** the Plaintiff, Riker McKenzie-el, hereby seeks the sum of over **SEVENTY FIVE DOLLARS ($75,000.00)** in damages.

/s/Mohamed Bamba
Mohamed M. Bamba, Esq.
CPF: 1712130030
Law Office of Mohamed Bamba
3601 Edmondson Avenue

Baltimore, Maryland 21229
Office: 410-947-2538
Fax: 410-947-2196
Email: Mohamed@bambalaw.com